# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**************************************************************************

**BOB BOLUS, SR.**

**Plaintiff,**

**vs.**

**KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania; and**

ADAMS COUNTY BOARD OF ELECTIONS; ALLEGHENY COUNTY BOARD OF ELECTIONS; ARMSTRONG COUNTY BOARD OF ELECTIONS;  BEAVER COUNTY BOARD OF ELECTIONS; BEDFORD COUNTY BOARD OF ELECTIONS; BERKS COUNTY BOARD OF ELECTIONS; BLAIR COUNTY BOARD OF ELECTIONS; BRADFORD COUNTY BOARD OF ELECTIONS; BUCKS COUNTY BOARD OF ELECTIONS; BUTLER COUNTY BOARD OF ELECTIONS; CAMBRIA COUNTY BOARD OF ELECTIONS; CAMERON COUNTY BOARD OF ELECTIONS; CARBON  COUNTY BOARD OF ELECTIONS; CENTRE COUNTY BOARD OF ELECTIONS; CHESTER COUNTY BOARD OF ELECTIONS; CLARION COUNTY BOARD OF ELECTIONS; CLEARFIELD COUNTY BOARD OF ELECTIONS; CLINTON COUNTY BOARD OF ELECTIONS; COLUMBIA COUNTY ) BOARD OF ELECTIONS; CRAWFORD COUNTY BOARD OF ELECTIONS; CUMBERLAND COUNTY BOARD OF ) ELECTIONS; DAUPHIN COUNTY BOARD OF ELECTIONS; DELAWARE COUNTY BOARD OF ELECTIONS; ELK COUNTY BOARD OF ELECTIONS; ERIE COUNTY BOARD OF ELECTIONS; FAYETTE COUNTY BOARD OF ELECTIONS; FOREST COUNTY BOARD OF ELECTIONS; FRANKLIN COUNTY BOARD OF ELECTIONS; FULTON COUNTY BOARD OF ELECTIONS; GREENE COUNTY BOARD OF ELECTIONS; HUNTINGDON COUNTY BOARD OF ELECTIONS; INDIANA COUNTY BOARD OF ELECTIONS; JEFFERSON COUNTY BOARD OF ELECTIONS; JUNIATA COUNTY BOARD OF ELECTIONS; LACKAWANNA COUNTY BOARD OF ELECTIONS; LANCASTER COUNTY BOARD OF ELECTIONS; LAWRENCE COUNTY BOARD OF ELECTIONS; LEBANON COUNTY BOARD OF ELECTIONS; LEHIGH COUNTY BOARD OF ELECTIONS; LUZERNE COUNTY BOARD OF ELECTIONS; LYCOMING COUNTY BOARD OF ELECTIONS; MCKEAN COUNTY BOARD OF ELECTIONS; MERCER COUNTY BOARD OF ELECTIONS; MIFFLIN

**CIVIL ACTION No.:**
**-CV-**

3:20cv1882

MEHALCHICK

FILED
SCRANTON

OCT 1 3 2020

PER _____ DEPUTY CLERK

COUNTY BOARD OF ELECTIONS; MONROE COUNTY
BOARD OF ELECTIONS; MONTGOMERY COUNTY
BOARD OF ELECTIONS; MONTOUR COUNTY BOARD OF
ELECTIONS; NORTHAMPTON COUNTY BOARD OF
ELECTIONS; NORTHUMBERLAND COUNTY BOARD OF
ELECTIONS; PERRY COUNTY BOARD OF ELECTIONS;
PHILADELPHIA COUNTY BOARD OF ELECTIONS; PIKE
COUNTY BOARD OF ELECTIONS; POTTER COUNTY
BOARD OF ELECTIONS; SCHUYLKILL COUNTY BOARD
OF ELECTIONS; SNYDER COUNTY BOARD OF
ELECTIONS; SOMERSET COUNTY BOARD OF
ELECTIONS; SULLIVAN COUNTY BOARD OF
ELECTIONS; SUSQUEHANNA COUNTY BOARD OF
ELECTIONS; TIOGA COUNTY BOARD OF ELECTIONS;
UNION COUNTY BOARD OF ELECTIONS; VENANGO
COUNTY BOARD OF ELECTIONS; WARREN COUNTY
BOARD OF ELECTIONS; WASHINGTON COUNTY BOARD
OF ELECTIONS; WAYNE COUNTY BOARD OF
ELECTIONS; WESTMORELAND COUNTY BOARD OF
ELECTIONS; WYOMING COUNTY BOARD OF
ELECTIONS; and YORK COUNTY BOARD OF ELECTIONS,

## Defendants,

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

AND NOW, Comes The Plaintiff, Bob Bolus, Sr. (hereinafter "Bolus"),  in pro-se, and claims

against The Defendants as follows:

## INTRODUCTION

1. Free and fair elections are essential to the right of Americans to choose who represents

them.  Failing to consider the role of human error through unmonitored by-mail voting is an

unacceptable threat to that right.  Unless an election is transparent and able to be verified, it

cannot be free and fair.   The Defendants are rushing to implement unmonitored

mail-in voting.   This promotes human error, an unpredictable and inevitable element, from

unfairly and improperly influencing an election.

2. All of this was on full display in Pennsylvania's June 2, 2020 Primary Election.

That election proved that Defendants are unwilling to properly administer the Pennsylvania

General Assembly's new mail-in voting law, Act 77, that made significant changes to Pennsylvania's elections, and instead have opted to promote unlimited use of unmonitored mail-in voting.

3. Defendants, through their haphazard administration of Act 77, have burdened voters, candidates, and political committees with the arbitrary and illegal preclusion of poll watchers from being present in all locations where votes are being cast because (a) the locations where mail-in or absentee ballots are being returned do not constitute a "polling place" within the meaning of Sections 102(q) and 417(b) of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, as amended ("Election Code"), 25 P.S. §§ 2602(q) and 2687(b); and (b) the poll watchers may only serve in the county of their residence under Election Code Section 417(b), 25 P.S. § 2687 (b). The result is that a significant portion of votes for elections in Pennsylvania are being cast in a fashion that denies any procedural visibility.

5. The impossibility of a fair election with mail-in ballots has been displayed as of this filing with a federal investigation into irregularities with mail-in ballots at the Luzerne County Bureau of Elections turned up discarded ballots that were cast for President Donald Trump, according to U.S. Attorney David J. Freed, as quoted in The Citizens Voice Newspaper, September 25, 2020.

6. FBI agents and Pennsylvania State Police who began investigating "potential isssues" with a small number of ballots determined a small number of military ballots for the November General Election were discarded.

7. Seven of the nine ballots had been cast for President Trump, while the remaining two resealed appropriately by elections bureau staff before the arrival of investigators, and their contents remain unknown.

8. In a letter to Luzerne County Election Director, U.S. Attorney, David J. Freed, wrote that "The FBI has recovered a number of documents relating to military ballots that had been improperly opened by your elections staff, and had the ballots removed or discarded, or removed and placed separately from the

envelop containing confidential voter information and attestation," as reported to The Citizens Voice Newspaper, September 25, 2020.

9. This violates Pennsylania election law, mandating ballots be securely stored, unopened, until 7 AM on election day.

10. There is no guarantee any of those votes will be counted in the General Election.

11. The right to vote includes not just the right to cast a ballot, but also the right to have it fairly counted if it is validly cast. An individual's right to vote is infringed if his or her vote is cancelled by a fraudulent vote or diluted by a single person voting multiple times. The United States Supreme Court has made this clear in case after case. See, e.g., Gray v. Sanders, 372 U.S. 368, 380 (1963) (every vote must be "protected from the diluting effect of illegal ballots."); Crawford v. Marion Cnty. Election Bd., 553 U.S. 181, 196 (2008) (plurality op. of Stevens, J.) ("There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters."); accord Reynolds v. Sims, 77 U.S. 533, 554-55 & n.29 (1964).

12. Accordingly, along with equitable and other relief, Plaintiffs seek an order, declaration, and/or injunction that prohibits Defendants from permitting the return of absentee and mail-in ballots to locations other than the respective offices of the county boards of elections as prescribed by the Pennsylvania Election Code, particularly with regard to mobile ballot collection centers and other inadequately noticed and unmonitored ad hoc drop boxes. Further, Plaintiffs seek an order, declaration, and/or injunction that bars county election boards from counting absentee and mail-in ballots that lack a secrecy envelope or contain on that envelope any text, mark, or symbol which reveals the elector's identity, political affiliation, or candidate preference. Finally, Plaintiffs seek an order, declaration, and/or injunction that permits poll watchers, regardless of their county of residence, to be present in all locations where votes are cast, including without limitation all locations where absentee or mail-in ballots are being returned.

## JURISDICTION AND VENUE

13. Under 28 U.S.C. §§ 1331 & 1343, this Court has subject matter jurisdiction because this action arises under the Constitution and laws of the United States and involves a federal election. Also, this Court has supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367.

14. Venue is proper because a substantial part of the events giving rise to the claims occurred in this District, and several of the Defendants reside in this District and all of the Defendants are residents of the Commonwealth of Pennsylvania in which this District is located. 28 U.S.C. § 1391.

## PARTIES

15. Plaintiff Bob Bolus, (hereinafter "Bolus"), is a competent adult, and a citizen of The United States of America, with both a residence and a principal place of business in Lackawanna County, Pennsylvania, within this District.

16. Defendant Kathy Boockvar, (hereinafter, "Secretary Boockvar"), is the Secretary of the Commonwealth of Pennsylvania. In this role, Secretary Boockvar leads the Pennsylvania Department of State. As Secretary, she is Pennsylvania's Chief Elections Officer and a member of the Governor's Executive Board. The Pennsylvania Constitution vests no powers or duties in Secretary Boockvar. Perzel v. Comes, 870 A.2d 759, 764 (Pa. 2005). Instead, her general powers and duties concerning elections are set forth in Election Code Section 201, 25 P.S. § 2621. Under the Election Code, Secretary Boockvar acts primarily in a ministerial capacity and has no power or authority to intrude upon the province of the Pennsylvania General Assembly. Perzel, 870 A.2d at 875; Hamilton v. Johnson, 141 A. 846, 847 (Pa. 1928). Secretary Boockvar is sued in her official capacity.

17. Defendants Adams County Board of Elections, Allegheny County Board of Elections, Armstrong County Board of Elections, Beaver County Board of Elections, Bedford

County Board of Elections, Berks County Board of Elections, Blair County Board of Elections, Bradford County Board of Elections, Bucks County Board of Elections, Butler County Board of Elections, Cambria County Board of Elections, Cameron County Board of Elections, Carbon County Board of Elections, Centre County Board of Elections, Chester County Board of Elections, Clarion County Board of Elections, Clearfield County Board of Elections, Clinton County Board of Elections, Columbia County Board of Elections, Crawford County Board of Elections, Cumberland County Board of Elections, Dauphin County Board of Elections, Delaware County Board of Elections, Elk County Board of Elections, Erie County Board of Elections, Fayette County Board of Elections, Forest County Board of Elections, Franklin County Board of Elections, Fulton County Board of Elections, Greene County Board of Elections, Huntingdon County Board of Elections, Indiana County Board of Elections, Jefferson County Board of Elections, Juniata County Board of Elections, Lackawanna County Board of Elections, Lancaster County Board of Elections, Lawrence County Board of Elections, Lebanon County Board of Elections, Lehigh County Board of Elections, Luzerne County Board of Elections, Lycoming County Board of Elections, McKean County Board of Elections, Mercer County Board of Elections, Mifflin County Board of Elections, Monroe County Board of Elections, Montgomery County Board of Elections, Montour County Board of Elections, Northampton County Board of Elections, Northumberland County Board of Elections, Perry County Board of Elections, Philadelphia County Board of Elections, Pike County Board of Elections, Potter County Board of Elections, Schuylkill County Board of Elections, Snyder County Board of Elections, Somerset County Board of Elections, Sullivan County Board of Elections, Susquehanna County Board of Elections, Tioga County Board of Elections, Union County Board of Elections, Venango County Board of Elections, Warren County Board of Elections, Washington County Board of Elections, Wayne County Board of Elections, Westmoreland County Board of Elections, Wyoming County Board of Elections, and

York County Board of Elections (collectively hereinafter, the "County Election Boards"), are the county boards of elections in and for each county of the Commonwealth of Pennsylvania as provided by Election Code Section 301, 25 P.S. § 2641. The County Election Boards "have jurisdiction over the conduct of primaries and elections in such counties, in accordance with the provision of [the Election Code.]" Id. at § 2641(a). The County Election Boards' general powers and duties are set forth in Election Code Section 302, 25 P.S. § 2642. The County Election Boards are executive agencies that carry out legislative mandates, and their duties concerning the conduct of elections are purely ministerial with no exercise of discretion. Shroyer v. Thomas, 81 A.2d 435, 437 (Pa. 1951); Perles v. Hoffman, 213 A.2d 781, 786 (Pa. 1965) (Cohen, J., concurring). .See also Deer Creek Drainage Basin Authority v. County Bd. of Elections, 381 A.2d 103, 109 (Pa. 1977) (Pomeroy, J., dissenting) ("A board of elections, it has been well said, "does not sit as a quasijudicial body adjudicating contending forces as it wishes, but rather as an executive agency to carry out legislative mandates. Its duties are ministerial only."); In re Municipal Reapportionment of Township of Haverford, 873 A.2d 821, 833, n.18 (Pa. Commw. Ct. 2005) ("The duties of a board of elections under the Election Code are ministerial and allow for no exercise of discretion."), appeal denied 897 A.2d 462 (Pa. 2006).

## FACTUAL ALLEGATIONS

### I. Federal Constitutional Protections for Free and Fair Public Elections.

18. Free, fair, and transparent public elections are crucial to democracy — a government of the people, by the people, and for the people.

19. The most fundamental principle defining credible elections in a democracy is that they must reflect the free expression of the will of the people.

20. Human error, and incompetence, are unpredictable and inevitable, and should not be the deciding factor in an election.

## A. The Right to Vote in Federal Elections.

21. The right of qualified citizens to vote in a state election involving federal candidates is recognized as a fundamental right under the Fourteenth Amendment of the United States Constitution. Harper v. Virginia State Board of Elections, 383 U.S. 663, 665 (1966). See also Reynolds, 377 U.S. at 554 (The Fourteenth Amendment protects the "the right of all qualified citizens to vote, in state as well as in federal elections.").

22. The fundamental right to vote protected by the Fourteenth Amendment is cherished in our nation because it "is preservative of other basic civil and political rights." Reynolds, 377 U.S. at 562.

23. "Obviously included within the right to [vote], secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted" if they are validly cast. United States v. Classic, 313 U.S. 299, 315 (1941). "[T]he right to have the vote counted" means counted "at full value without dilution or discount." Reynolds, 377 U.S. at 555, n.29 (quoting South v. Peters, 339 U.S. 276, 279 (1950) (Douglas, J., dissenting)).

24. "Every voter in a federal . . . election, whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes." Anderson v. United States, 417 tJ.S. 211, 227 (1974); see also Baker v. Carr, 369 U.S. 186, 208 (1962).

25. Fraudulent votes "debase[]" and "dilute" the weight of each validly cast vote. See Anderson, 417 U.S. at 227.

26. "The deposit of forged ballots in the ballot boxes, no matter how small or great their number, dilutes the influence of honest votes in an election, and whether in greater or less degree is immaterial. The right to an honest [count] is a right possessed by each voting elector, and to the extent that the importance of his vote is nullified, wholly or in part, he has been injured in the free exercise of a right or privilege secLired to him by the laws and Constit~.ltion of the United States."

Anderson, 417 U.S. at 226 (quoting Prichard v. United States, 181 F.2d 326, 331 (6th Cir.), aff'd

due to absence of quorum, 339 U.S. 974 (1950)).

27. Practices that promote fraud or fail to contain basic minimum guarantees against

fraud can violate the Fourteenth Amendment by leading to the dilution of validly cast ballots. See

Reynolds, 377 U.S. at 555 ("[T]he right of suffrage can be denied by a debasement or dilution of

the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the

franchise.").

28. There is no way to predict or control human error, such as an accident due to driver negligence while

transporting ballots.

29. There is no way to ensure uniform compliance by each county's bureau of elections, as seen in

Luzerne County's mishandling of mail-in ballots.

30. An election should not be won r lost based on conduct and mistakes by emplyees and contractors of

the various bureaus of elections.

## B. The Equal Protection Clause of the Fourteenth Amendment.

31. "The right to vote is protected in more than the initial allocation of the franchise.

Equal protection applies as well to the manner of its exercise. Having once granted the right to

vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's

vote over that of another." Bush v. Gore, 531 U.S. 98, 104-5 (2,000). See also Harper, 383 U.S.

at 665 ("Once the franchise is granted, lines may not be drawn which are inconsistent with the

Equal Protection Clause of the Fourteenth Amendment.").

32. The Equal Protection Clause of the Fourteenth Amendment proscribes that "one

person's vote must be counted equally with those of all other voters in a State." Reynolds, 377

U.S. at 560. In other words, "whenever a state or local government decides to select persons by

popular election to perform governmental functions, [equal protection] requires that each qualified

voter must be given an equal opportunity to participate in that election ...." Hadley, v. Junior

College District, 397 U.S. 50, 56 (1968).

33. Accordingly, the Equal Protection Clause requires states to "`avoid arbitrary and

disparate treatment of the members of its electorate."' Charfauros v. Bd. of Elections, 249 F.3d

941, 951 (9th Cir. 2001) (quoting Bush, 531 U.S. at 105); see also Dunn v. Blumstein, 405 U.S.

330, 336 (1972) ("[A] citizen has a constitutionally protected right to participate in elections on an

equal basis with other citizens in the jurisdiction."); Gray, 372 U.S. at 380 ("The idea that every

voter is equal to every other voter in his State, when he casts his ballot in favor of one of several

competing candidates, underlies many of [the Supreme Court's] decisions.")

34. "[T]reating voters differently" thus "violate[s] the Equal Protection Clause" when

the disparate treatment is the result of arbitrary, ad hoc processes. Charfauros, 249 F.3d at 954.

Indeed, a "minimum requirement for non-arbitrary treatment of voters [is] necessary to secure the

fundamental right [to vote]." Bush, 531 U.S. at 105.

35. The use of "standardless" procedures can violate the Equal Protection Clause.

Bush, 531 U.S. at 103. "The problem inheres in the absence of specific standards to ensure . . .

equal application" of even otherwise unobjectionable principles. Id. at 106. Any voting system

that involves discretion by decision makers about how or where voters will vote must be "confined

by specific rules designed to ensure uniform treatment." Id. at 106.

36. Allowing a patchwork of different rules from county to county in a statewide

election involving federal and state candidates implicates equal protection concerns. Pierce v.

Allegheny County Bd. of Elections, 324 F. Supp. 2d 684, 698-699 (W.D. Pa. 2003). See also Gray,

372 U.S. at 379-381 (a county unit system which weights the rural vote more heavily than the

urban vote and weights some small rural counties heavier than other larger rural counties violates

the Equal Protection Clause and its one person, one vote jurisprudence).

### C. Constitutional Commitment of Federal Election Regulation to the State Legislature.

37. In statewide elections involving federal candidates, "a State's regulatory authority springs directly from the United States Constitution." Project Vote v. Kelly, 805 F. Supp. 2d 152, 174 (W.D. Pa. 2011) (citing Cook v. Gralike, 531 U.S. 510, 522-523 (2001); U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 805 (1995)).

38. The Elections Clause of the United States Constitution states that "[t]he Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof." U.S. Const. Art. I, § 4, cl. 1 (emphasis added). Likewise, the Electors Clause of the United States Constitution states that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors" for President." U.S. Const. Art. II, § 1, cl. 2 (emphasis added).

39. The Legislature is "`the representative body which makes] the laws of the people."' Smiley v. Holm, 285 U.S. 355, 365 (1932). Regulations of congressional and presidential elections, thus, "must be in accordance with the method which the state has prescribed for legislative enactments." Id. at 367; see also Ariz. Slate Legislature v. Ariz. Indep. RedistYicting Comm'n, 135 S. Ct. 2652, 2668 (U.S. 2015).

40. Because the United States Constitution reserves for state legislatures the power to set the time, place, and manner of holding elections for Congress and the President, state executive officers have no authority to unilaterally exercise that power, much less flout existing legislation.

41. Nor can the authority to ignore existing legislation be delegated to an executive officer. While the Elections Clause "was not adopted to diminish a State's authority to determine its own lawmaking processes," Ariz. State Legislature, 135 S. Ct. at 2677, it does hold states accountable to their chosen processes when it comes to regulating federal elections. Id. at 2668.

42. "A significant departure from the legislative scheme for appointing Presidential

electors presents a federal constitutional question" Bush, 531 U.S. at 113 (Rehnquist, J.,

concurring): Smiley, 285 U.S. at 365.

## II. Pennsylvania Constitutional Protections for Free and Fair Public Elections.

43. The Pennsylvania Constitution also bestows the right to vote upon qualified citizens

and guarantees them equal protection in the enjoyment of that right. See Pa. Const. art. VII, § 1 &

art. I, § 28.

44. Further, Article I, Section 5 of the Pennsylvania Constitution, entitled "Elections"

and commonly referred to as the "Free and Equal Elections Clause," provides:

> Elections shall be free and equal; and no power, civil or military,
> shall at any time interfere to prevent the free exercise of the right of
> suffrage. Pa. Const. art. I, § 5.

45. The Free and Equal Elections Clause "is contained within the Pennsylvania

Constitution's `Declaration of Rights,' which . . . is an enumeration of the fundamental individual

human rights possessed by the people of the Commonwealth that are specifically exempted from

the powers of the Commonwealth government to diminish." League of Women Voters v.

Commonwealth, 178 A.3d 737, 803 (Pa. 2018).

46. "[E]lections are free and equal within the meaning of the [Pennsylvania]

Constitution when they are public and open to all qualified electors alike; when every voter has

the same right as every other voter; when each voter under the law has the right to cast his ballot

and have it {aonestly counted; when the regulation of the right to exercise the franchise does not

deny the franchise itself, or make it so difficult as to amount to a denial; and when no constitutional

right of the qualified elector is subverted or denied him." Winston v. Moore, 91 A. 520, 523 (Pa.

1914) (emphasis added).

47. Winston's mandate set forth in the preceding paragraph represents "the minimum

requirements for `free and fair' elections" in this Commonwealth. League of Women Voters, 178 A.3d at 810.

48. The rights protected by the Free and Equal Elections Clause of the Pennsylvania Constitution, including without limitation the right to free and fair public elections, may not be taken away by an act of the Commonwealth's legislative or executive branches, and both branches are prohibited by this clause from interfering with the exercise of those rights, even if the interference occurs by inadvertence. League of Women Voters, 178 A.3d at 810.

49. The rights protected by the Free and Equal Elections Clause of the Pennsylvania Constitution, including without limitation the right to free and fair public elections, apply to the election of both federal and state candidates. League of Women Voters, 178 A.3d at 811.

III. Poll Watching Ensures Free and Fair Public Elections.

50. The Pennsylvania Constitution gives the Commonwealth's General Assembly the authority to enact legislation governing the conduct of elections. See Pa. Const. art. VII, § 6; Winston, 91 A. at 522.

51. "Pennsylvania's election laws apply equally to federal and state elections." Project Vote, 805 F. Supp. 2d at 174 (citing Kuznik v. Westmoreland County Board of Elections, 902 A.2d 476, 490-493 (Pa. 2006)).

52. Elections in Pennsylvania are governed and regulated by the Election Code.

53. "Although the [Commonwealth] is ultimately responsible for the conduct and organization of elections, the statutory scheme [promulgated by the Election Code] delegates aspects of that responsibility to the political parties. This delegation is a legislative recognition of `the critical role played by political parties in the process of selecting and electing candidates for state and national office."' Tiryak v. Jordan, 472 F. Supp. 822, 823-24 (E.D. Pa. 1979 (quoting Marchioro v. Chaney, 442 U.S. 191, 195 (1979)).

54. Election Code Section 417, 25 P.S. § 2687, creates the position of poll-watcher and entrusts to each candidate for nomination or election at any election, and each political party and each political body which has nominated candidates for such elections, the power to appoint poll watchers to serve in each election district in the Commonwealth. See 25 P.S. § 2687(a).

55. Under the Election Code, "poll watchers] perform[] a dual function on Election Day. On the one hand, because [poll watchers] are designated and paid by [candidates, political parties, and/or political bodies], [their] job is to guard the interests of [their] candidates [or political parties or bodies]. On the other hand, because the exercise of [their] authority promotes a free and fair election, poll watchers] serve to guard the integrity of the vote. Protecting the purity of the electoral process is a state responsibility and [poll watchers'] statutory role in providing that protection involves [them] in a public activity, regardless of [their] private political motives." Tiryak v. Jordan, 472 F. Supp. 822, 824 (E.D. Pa. 1979).

56. Election Code Section 417 dictates the number of poll watchers allowed, the qualifications and manner of their appointment, their provision of a watcher's certificates from the County Election Boards, their location within the polling place2, the activities permitted by poll watchers, and the m~imum amount of compensation to be paid to poll watchers. 25 P.S.

57. Under Election Code Section 417(b), poll watchers may observe the election process from the time the first polling place official appears in the morning to open the polling place until the time the polls are closed and the election returns are counted and posted at the polling place entrance. 25 P.S. § 2687(b). However, until the polls close, only one poll watcher representing each political party and its candidates at a general, municipal, or special election can be present in the polling place outside the enclosed space from the time that the election officers meet to open the polls and until the counting of the votes is complete. Id. See also Election Code Section 1220, 25 P.S. § 3060(a) & (d). Once the polls close and while the ballots are being counted,

then all the poll watchers for candidates and political parties or bodies are permitted to be in the polling place outside the enclosed space. 25 P.S. § 2687(b).

58. Under Election Code Section 417(b), poll watchers are permitted to keep a list of voters, and during times when voters are not present or voting, watchers can ask the Judge of Elections to inspect the voting check list and either of the two numbered lists of voters, but cannot mark or alter those lists. 25 P.S. § 2687(b).

59. In addition to the activities authorized by Election Code Section 417(b), poll watchers are among those who are authorized under Election Code Section 1210(d), 25 P.S. § 3050(d), to challenge any person who presents himself or herself to vote at a polling place on Election Day concerning the voter's identity, continued residence in the election district, or registration status. See 25 P.S. § 3050(d) ("any person, although personally registered as an elector, may be challenged by any qualified elector, election officer, overseer, or watcher at any primary or election as to his identity, as to his continued residence in the election district or as to any alleged violation of the provisions of section 1210 of this act, . . .") (emphasis added).

60. Also, prior to October 31, 2019, poll watchers were authorized under Election Code Section 1308(e), 25 P.S. § 3146.8(e) (repealed), to be present at the polling place on Election Day when absentee ballots were examined by local election boards and to assert challenges to the mailin ballots' validity.

61. Moreover, poll watchers' functions go beyond the activities authorized under Election Code Sections 417(b) and 1210(d) on Election Day.

62. For example, under Election Code Section 310, 25 P.S. § 2650, poll watchers appointed by parties, political bodies, or bodies of citizens may appear at any public session of the county board of elections, and at any computation and canvassing of returns of any primary or election and recount of ballots or recanvass of voting machines, in which case such poll watchers may exercise the same rights as watchers at polling places and may raise objections to any ballots

or machines for subsequent resolution by the county board of elections and appeal to the courts.

25 P.S. § 2650(a) & (c).

63. Without poll watchers, the integrity of the vote in elections is threatened and the constitutional right to free and fair public elections under the United States and Pennsylvania Constitutions is denied.

### IV. Danger of unpredictable human error related to mail-in voting

64. Human error has been a factor among humans since the dawn of time.

65. The discarded ballots in Luzerne County prove human error can and will impact an election.

66. The mishandling of mail-in ballots, also in Luzerne County, prove human error can and will impact an election.

67. Election bureaus are required o securely store un-opened mail-in ballots until 7 AM on election day.

68. Human error can lead to ballots being mishandled and processed with other forms of alternate ballots.

69. Human nature is also unpredictable, and it follows reasoning that election bureau employees, in an attempt to decrease work volume and stress on election day, can begin counting ballots early.

70. Mail-in voting also eliminates much of the final month of campaigning and campaigning at polling centers, which may influence voters.

71. This risk of abuse by absentee or mail-in voting is magnified by the fact that "many states' voter registration databases are outdated or inaccurate." Morley, Redlines, p. 2. A 2012 study from the Pew Center on the States -which the U.S. Supreme Court cited in a recent case - found that "[a]pproximately 24 million -one of every eight -voter registrations in the United States are no longer valid or are significantly inaccurate"; "[m]ore than 1.8 million deceased individuals are listed as voters"; and "[a]pproximately 2.75 million people have registrations in more than one state." See Pew Center on the States, Election Initiatives Issue Brief, "Inaccurate, Costly, and

Inefficient: Evidence That America's Voter Registration System Needs an Upgrade," (Feb. 2012)

(available at https://www.issuelab.org/resources/13005/13005.pdf, and referred to and

incorporated herein by reference) (cited in Husted v. A. Philip Randolph Inst., 138 S. Ct. 1833,

1838 (U.S. 2018)).

72. To be sure, absentee or mail-in voting can be a legitimate feature of a state's

election process when coupled with adequate procedural safeguards to deter fraud. But given the

many risks discussed above, in most states, it is an alternative implemented carefully and slowly

and only with such safeguards in place.

73. One procedural safeguard is prohibiting a third party's ability to collect and return

another person's absentee or mail-in ballot. As the Carter-Baker Report explains: "States therefore

should reduce the risks of fraud and abuse in absentee voting by prohibiting `third-party'

organizations, candidates, and political party activists from handling absentee ballots." CarterBaker

Report, p. 46.

74. Another procedural safeguard is specifying the location where absentee or mail-in

ballots can be returned and providing for state officials or poll watchers to monitor the return or

delivery of ballots to those location.

75. Federal law also recognizes the risks of unmonitored absentee or mail-in voting and

thus requires certain first-time voters to present identification. See 52 U.S.C. § 21083(b).

76. On June 2, 2020, Pennsylvania held its Primary Election which was the first

election that followed the enactment of Act 77 and its unmonitored all voter mail-in voting

alternative.

77. Prior to the Primary Election, Pennsylvania election officials estimated that as

many as two million (2,000,000) voters would apply to vote by mail. See Crossey v. Boockvar,

No. 266 MD 2020 (Pa. Commw. Ct. May 18, 2020), "Decl. of Jonathan Marks, the Deputy

Secretary for Elections and Commissions for Pennsylvania," ¶ 32 (hereinafter, "Marks Decl." and referred to and incorporated herein by reference). "Ultimately, more than 1.8 million voters applied for amail-in or absentee ballot." See "Trump, Biden win Pennsylvania primary contests amid unrest, pandemic," TRIBLive—Associated Press (June 2, 2020) (available at hops://triblive.com/news/pennsylvania/pennsylvania primary-begins-amid-unrest pandemi% and referred to and incorporated herein by reference).

78. According to Secretary Boockvar, "nearly 1.5 million voters cast their vote by mailin or absentee ballot [in the June 2, 2020 Primary Election.]" See K. Boockvar, "FixGov: Historic primary paves way for successful general election in Pennsylvania," The Brookings Institution (June 22, 2020) (available at hops: //www. Brookings. edu/blog/fixgov/2020/06/22/historic primarypaves-way for-successful-general-election-in Pennsylvania/, and referred to and incorporated herein by reference).

79. Despite the record number of requested and voted absentee or mail-in ballots, Defendants failed to take adequate measures to ensure that the provisions of the Election Code concerning absentee or mail-in ballots, including without limitation the newly enacted Act 77, were followed.

80. Moreover, the Election Code sets forth the uniform standards that all sixty-seven (67) counties must follow in order to conduct any election in this Commonwealth and to cast and count votes, and the provisions of the Election Code do not create different standards for one or more classes of counties. Rather, the standards apply equally to all 67 counties.

81. Accordingly, the manner in which the November 3, 2020 General Election is conducted and in which votes are cast and counted should be uniform across the counties of the Commonwealth.

82. The Equal Protection Clause mandates that the Commonwealth provide and use the

same statewide uniform standards and regulations when conducting statewide or multi-county elections involving federal candidates, including without limitation the standards and regulations providing for the casting and counting of votes. Pierce, 324 F. Supp. 2d at 698-699. In other words, the Equal Protection Clause-requires every county in the Commonwealth to enforce and apply the same standards and procedures for an election, and it does not allow a select few counties to either decline to enforce or employ those standards or develop their own contradicting standards that benefit their voters to the detriment of voters outside their counties. Id.

**WHEREFORE**, Plaintiffs ask this Court to enter judgment in his favor and provide the following relief:

A. An order or declaration that the return of absentee and mail-in ballots by nondisabled electors to locations other than the respective office of the County Election Boards violates the Pennsylvania Election Code and the United States and Pennsylvania Constitutions;

B. In the alternative to the relief requested in Subparagraph (A), an order or declaration that Defendants must comply with Pennsylvania laws governing notice of changes to polling locations and site criteria for polling locations when establishing locations other than their respective offices to which voters may return absentee and mail-in ballots, and ensure that all counties utilize that option;

C. An order or declaration that the counting of absentee and mail-in ballots that lack an "Official Election Ballot" secrecy envelope or contain on that envelope any text, mark, or symbol which reveals the elector's identity, political affiliation, or candidate preference violates the Pennsylvania Election Code and the United States and Pennsylvania Constitutions; D. An order or declaration enjoining the enforcement of Election Code Section 417's residency and "polling place" requirements for poll watchers as a violation of the rights secured by the United States and Pennsylvania Constitutions;

E. A preliminary and permanent injunction prohibiting Defendants, and all other persons acting in concert with them, from collecting absentee and mail-in ballots in locations other than in the office of

each of the County Election Boards and/or through unsecured and unmonitored drop boxes and other similar means; F. A preliminary and permanent injunction prohibiting Defendants, and all other persons acting in concert with them, from counting absentee and mail-in ballots that lack an "Official Election Ballot" secrecy envelope or contain on that envelope any text, mark, or symbol which reveals the elector's identity, political affiliation, or candidate preference;

G. A preliminary and permanent injunction prohibiting Defendants, and all other persons acting in concert with them, from restricting poll watchers, regardless of their county of residence, to be present in all locations where votes are cast, including without limitation where -55- absentee or mail-in ballots are being returned before and on Election Day and at any pre-canvass meetings; H. Plaintiffs' reasonable costs and expenses, including attorneys' fees;

and All other relief that Plaintiffs are entitled to and that the Court deems just and proper.

Respectfully Submitted,

/s/

_____

Bob Bolus, Sr.
In Pro Se
922 Sanderson Street
Throop, PA 18512
(570) 346-7659
Fax (570) 383-9311

```
Court Name: District Court
Division: 3
Receipt Number: 333873372
Cashier ID: gangeli
Transaction Date: 10/13/2020
Payer Name: BOLUS TRUCK PARTS

CIVIL FILING FEE
 For: BOLUS TRUCK PARTS
 Case/Party: D-PAM-3-20-CV-001882-001
 Amount:        $400.00

Paper Check Conversion
 Check/Money Order Num: 1581
 Amt Tendered:  $400.00

Total Due:      $400.00
Total Tendered: $400.00
Change Amt:     $0.00


Only when bank clears the check or
verifies credit of funds is the fee
or debit officially paid or
discharged. A $53.00 fee will be
charged for returned checks.
```