## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOB BOLUS, SR., | |
| Plaintiff, | CIVIL ACTION NO. 3:20-CV-01882 |
| v. | (MARIANI, J.) |
| | (MEHALCHICK, M.J.) |
| KATHY BOOCKVAR, et al., | |
| Defendants. | |

## <u>REPORT AND RECOMMENDATION</u>

Before the Court is a complaint containing a request for a preliminary injunction filed by Plaintiff Bob Bolus, Sr. ("Bolus") on October 13, 2020.[1] (Doc. 1). The Defendants in this matter are Kathy Boockvar as the Secretary of the Commonwealth, as well as the Board of Elections of every county in Pennsylvania. Bolus seeks a Court-issued preliminary injunction prohibiting Defendants from collecting absentee and mail-in ballots through "unsecured and unmonitored drop boxes" as well as in locations other than the County Election Board office. (Doc. 1, at 19-20). Bolus also seeks to prohibit Defendants "from counting absentee and mail-in ballots that lack an 'Official Election Ballot' secrecy envelope or contain on that envelope any text, mark, or symbol which reveals the elector's identity, political affiliation, or candidate preference." (Doc. 1, at 20). Finally, Bolus seeks to enjoin Defendants from restricting poll watchers to their county of residence and to allow them to be present wherever absentee or

---

[1] A complaint containing a request for an injunction is effective, despite the absence of an independent motion. *See Chavis v. U.S.*, 597 F. App'x 38, 41 (3d Cir. 2014) (reaching the merits of a request for a "preliminary injunction" in the complaint); *Powelton Civic Home Owners Ass'n v. Department of Housing and Urban Development*, 284 F.Supp. 809, 815 (E.D. Pa. 1968) (construing complaint's request for "such relief as justice and equity require" as a request for preliminary injunctive relief, and granting it).

mail-in ballots are being returned, either before or on Election Day including at pre-canvass meetings. (Doc. 1, at 20).

## I.    PRELIMINARY INJUNCTION STANDARD

Four factors govern a district court's decision in considering a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. *Grill v. Aversa*, 908 F. Supp. 2d 573, 591 (M.D. Pa. 2012); *Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir.1994); *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir.1985)); *see also Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 170–71 (3d Cir.2001).

A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. Such relief is extraordinary in nature and should issue in only limited circumstances. *See Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir. 1994). In order to satisfy this exacting standard, the party moving for a preliminary injunction must carry its burden of demonstrating both: (1) likelihood of success on the merits; and (2) the existence of irreparable injury from the alleged misconduct. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir.1989). If the movant fails to carry this burden on these two elements, the motion should be denied since a party seeking such relief must "demonstrate both a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir.1989) (emphasis in original) (*quoting Morton*

*v. Beyer*, 822 F.2d 364 (3d Cir.1987)). Further, given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party.

As a threshold matter, it is a movant's burden to show that the "preliminary injunction must be the only way of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir.1992) (emphasis in original, citations omitted). Therefore, "upon an application for a preliminary injunction to doubt is to deny." *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir.1937). A preliminary injunction "may not be used simply to eliminate a possibility of a remote future injury." *Holiday Inns of Am., Inc. v. B&B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969). "[T]he irreparable harm must be actual and imminent, not merely speculative." *Angstadt ex rel. Angstadt v. Midd-West Sch.*, 182 F. Supp. 2d 435, 437 (M.D. Pa. 2002). "[M]ore than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat . . . .'" *Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (citations omitted). "A preliminary injunction cannot be issued based on past harm. The purpose of a preliminary injunction is to prevent *future* irreparable harm." *Fisher v. Goord*, 981 F. Supp. 140, 168 (W.D.N.Y. 1997) (emphasis in original). Thus, the relevant inquiry is whether the party moving for injunctive relief is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued.

Moreover, "[t]he 'requisite feared injury or harm must be irreparable—not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'" *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (quoting *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an

3

equitable remedy following a trial. The preliminary injunction must be the *only* way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (emphasis added). "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for ...'." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). If the record does not support a finding of both irreparable injury and a likelihood of success on the merits, then a preliminary injunction cannot be granted. *Marxe v. Jackson*, 833 F.2d 1121 (3d Cir.1987).

## II.   DISCUSSION

As observed previously, a preliminary injunction is an extraordinary remedy, one that should be ordered only in limited cases, upon a compelling showing. That showing has not been made in this case. Bolus's request fails the first requirement for a preliminary injunction: a likelihood of success on the merits. To meet this requirement, the movant must show a "reasonable probability" of success. *Punnett v. Carter*, 621 F.2d 578, 583 (3d Cir. 1980) (internal quotation marks omitted); *see Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc). Bolus does not establish a reasonable probability of success because he fails to establish standing.

### A.   BOLUS LACKS STANDING.

"Article III of the Constitution limits federal-court jurisdiction to 'Cases' and 'Controversies.'" *Massachussetts v. EPA*, 549 U.S. 497, 515 (2007). To satisfy these constitutional standing requirements, a plaintiff must show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable

4

decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 180-81 (2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Bolus's request for a preliminary injunction prohibiting Defendants from counting absentee and mail-in ballots which lack a so-called "secrecy envelope" or where the secrecy envelope contains "any text, mark, or symbol which reveals the elector's identity, political affiliation, or candidate preference" can be disposed of summarily. (Doc. 1, at 20). The Supreme Court of Pennsylvania already ordered that "a mail-in ballot that is not enclosed in the statutorily-mandated secrecy envelope must be disqualified," and that the secrecy envelope must be left "unblemished by identifying information" including who the elector is, with what party they are affiliated, or for whom they voted. *Pennsylvania Democratic Party v. Boockvar*, --- Pa. ----, --- A.3d ----, 2020 WL 5554644, at *24, 26 (Sept. 17, 2020) (citing 25 P.S. §§ 3146.8(g)(4)(ii), 3150.16(a)). Since the Pennsylvania Supreme Court effectively ruled in Bolus's favor on this issue, it is no longer "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *See Friends of the Earth, Inc.*, 528 U.S. at 181 (holding redressability to be an element of standing under the Constitution). If this Court were to now issue a preliminary injunction on this issue, it would be redundant, and thus ineffective, in redressing any injury.

Bolus additionally requests that (1) Defendants be enjoined from collecting absentee and mail-in ballots through "unsecured and unmonitored drop boxes" as well as in locations other than the County Election Board office, and (2) Defendants be enjoined "from restricting poll watchers, regardless of their county of residence, to be present in all locations where votes are cast, including without limitation where absentee or mail-in ballots are being returned before and on Election Day and at any pre-canvass meetings." (Doc. 1, at 19-20). In a recent

case in the District of Nevada, a plaintiff took issue with similar election practices as Bolus does here. *See Paher v. Cegavske*, 457 F. Supp. 3d 919 (D. Nev. 2020). In *Paher*, the plaintiffs, who were all registered Nevada voters, sought to enjoin Nevada's Secretary of State from implementing a plan to mail all active registered voters an absentee ballot for the primary election. *Paher*, 457 F. Supp. 3d at 922-23. Ballots were to be mailed to the voters' addresses on their voter registration forms. *Paher,* 457 F. Supp. 3d at 923. The plan also established physical polling places in each county so as to accommodate same-day registration requirements enacted by law. *Paher*, 457 F. Supp. 3d at 923. Plaintiffs challenged the expansion of mail-in voting, asserting that it "circumvents various statutory safeguards designed to protect against voter fraud, and that their votes will as a result be diluted by illegal votes." *Paher*, 457 F. Supp. 3d at 924. They additionally claimed that the plan violated their right to vote in a federal election where the manner of election is chosen by the state legislature. *Paher*, 457 F. Supp. 3d at 925.

The plaintiffs in *Paher* asserted that they had standing to bring suit because "mail-in ballots are unlawful under state law, resulting in vote dilution, and that vote dilution from voter fraud results in disenfranchisement, and 'disenfranchisement is a severe burden that is personal to the person disenfranchised.'" *Paher*, 457 F. Supp. 3d at 926. The court characterized their potential injury as follows: "the [p]lan will lead to an increase in illegal votes thereby harming them as rightful voters by diluting their vote." *Paher*, 457 F. Supp. 3d at 926.

Citing two United States Supreme Court cases as precedent, the court held that the plaintiffs lacked standing to bring this case because their "purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada

6

voter." *Paher*, 457 F. Supp. 3d at 926. The Supreme Court has held that an injury must be "concrete and particularized." *Paher*, 457 F. Supp. 3d at 926 (citing *Spokeo Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016) ("for an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'")).[2] Additionally, the Supreme Court has

> consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.

> *Paher*, 457 F. Supp. 3d at 926 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573-74 (1992).

The court concluded that claims of vote dilution have previously been found to lack injury-in-fact required for standing and that these plaintiffs, too, failed to allege a particularized injury so as to meet the first standing prong. *Paher*, 457 F. Supp. 3d at 926-27 (collecting cases).

As in *Paher*, Bolus alleges that without his requested preliminary injunction, his vote could be diluted due to voter fraud. (Doc. 1, at 8-9). Bolus states that the Fourteenth Amendment protects the "right of qualified citizens to vote in a state election involving federal candidates" and that "fraudulent votes 'debase' and 'dilute' the weight of each validly cast vote." (Doc. 1, at 8). Additionally, Bolus submits that the Fourteenth Amendment's Equal Protection Clause proscribes that every person's vote counts the same as all other voters in

---

[2] The Supreme Court has also held that a taxpayer who sued to collect CIA expenditures – alleging injury in the form of an inability to follow the actions of Congress or the Executive resulting in an inability to perform his role as a member of the electorate in intelligently voting for candidates seeking national office – lacked standing. *United States v. Richardson*, 418 U.S. 166, 176 (1974). The Court explained that standing was lacking because "the impact on him is plainly undifferentiated and 'common to all members of the public.'" *Richardson*, 418 U.S. at 176-77.

the State. (Doc. 1, at 9). Bolus further alleges that instituting "a patchwork of different rules from county to county" and a "voting system that involves discretion by decision makers about how or where voters will vote" violates the Equal Protection Clause. (Doc. 1, at 10). As for the limitations on poll-watchers, the only indication that this may affect Bolus is his statement that "without poll watchers, the integrity of the vote in elections is threatened and the constitutional right to free and fair public elections under the United States and Pennsylvania Constitutions is denied." (Doc. 1, at 16).

First, these allegations fail to meet the first prong of the standing requirement because they are not particularized. *See Friends of the Earth, Inc.*, 528 U.S. at 180-81. *Paher* is directly on point: Bolus's alleged injury of having his vote diluted due to potential election fraud could conceivably be raised by any voter in the Commonwealth. *See Paher*, 457 F. Supp. 3d at 926. Bolus claims harm to every citizen's fundamental right to vote and that every voter's right to equal protection is at risk. (Doc. 1, at 8-10). Therefore, the relief he seeks would "directly and tangibly" no more benefit him than it would the public at large. (*See* Doc. 1, at 8-10). When this is the case, Article III case or controversy demands are not met. *See Lujan*, 504 U.S. at 573-74. At no point in the Complaint does Bolus identify how he is more affected by vote dilution than any other voter in the Commonwealth. (Doc. 1). The lack of particularized injury weighs heavily against Bolus's reasonable probability of success on the merits. *See Grill,* 908 F. Supp. 2d at 591 (listing the preliminary injunction requirements).

Second, Bolus's allegations are speculative and hypothetical rather than likely, and actual or imminent. *See Friends of the Earth, Inc.*, 528 U.S. at 180-81. Bolus states that "the use of 'standardless' procedures can violate the Equal Protection Clause," and that "allowing a patchwork of different rules from county to county in a statewide election involving federal

8

and state candidates implicates equal protection concerns." (Doc. 1, at 10). But nowhere does Bolus identify the "patchwork of different rules," or "standardless procedures." (Doc. 1). He states that the Equal Protection Clause requires every county to apply the same election standards and procedures, but does not allege that counties are not applying uniform standards and procedures. (Doc. 1, at 18-19). In short, his complaint is composed of much law and little facts. (Doc. 1). Wholly lacking is any allegation that collecting ballots in locations other than the office of the County Election Board results in fraudulent ballots.[3] Bolus frequently expresses worry about events that could possibly happen, such as a car accident while transporting ballots or "ballots being mishandled and processed with other forms of alternate ballots." (Doc. 1, at 9, 16). He speaks often of procedural safeguards and risk of abuse. (Doc. 1, at 16-17). Speculative injury does not satisfy the 'case' or 'controversy' requirement to warrant consideration by this Court, however. *See Friends of the Earth, Inc.*, 528 U.S. at 180-81. Bolus must make a compelling showing that injury is both actual or imminent, and likely. *See Continental Grp., Inc.,* 614 F.2d at 359. There is no evidence – nor, even, allegation – of actual, imminent, or likely injury. (Doc. 1). This failing also weighs heavily against Bolus's reasonable probability of success on the merits. *See Grill,* 908 F. Supp. 2d at 591 (listing the preliminary injunction requirements); *see also Donald J. Trump for President, Inc., v. Boockvar,* --- F. Supp. 3d ----, 2020 WL 5997680, at *2 (W.D. Pa. 2020) (to issue an injunction, "[w]hile [p]laintiffs may not need to prove actual voter fraud, they must at least prove that such fraud is 'certainly impending.'").

---

[3] The only instance of potentially fraudulent conduct Bolus alleges is when nine ballots were found discarded *at the Luzerne County Bureau of Elections.* (Doc. 1, at 3). This does not support his claim that ballots should only be returned to the offices of the county board of election so as to prevent fraud.

B.   Bolus's claims lack merit.

Even if Bolus satisfied the standing requirements, his claims would fail on their merits. As alluded to *supra*, the Pennsylvania Supreme Court has addressed the constitutionality of poll watcher residency requirements, and has also deemed it within Pennsylvania law for mail-in ballots to be accepted at locations other than the office of the county board of elections. *Pennsylvania Democratic Party v. Boockvar*, --- A.3d at ----, 2020 WL 5554644. The right to serve as a poll watcher is conferred by statute rather than the Constitution, "is not incidental to the right of free association" so has no distinct First Amendment protection, and does not implicate core political speech, so restrictions do not bear on an individual's constitutional right to vote. *Boockvar*, --- A.3d at ----, 2020 WL 5554644, at *30. Therefore, only a showing that a rational basis exists for restrictions on poll watchers is required. *Boockvar*, --- A.3d at ----, 2020 WL 5554644, at *30. That "clear rational basis" is that "Pennsylvania has envisioned a county-based scheme for managing elections within the Commonwealth," and it is "reasonable that the Legislature would require poll watchers, who serve within the various counties of the state, to be residents of the counties in which they serve." *Boockvar*, --- A.3d at ----, 2020 WL 5554644, at *30. In *Boockvar*, "heightened election fraud involving mail-in voting" was alleged but such allegation was "unsubstantiated" and "specifically belied by the Act 35 report issued by [Secretary Boockvar] on August 1, 2020." *Boockvar*, --- A.3d at ----, 2020 WL 5554644, at *30. The court concluded "that the poll-watcher residency requirement does not violate the state or federal constitutions." *Boockvar*, --- A.3d at ----, 2020 WL 5554644, at *31. In that same case, the Pennsylvania Supreme Court addressed the Commonwealth's Election Code which allows for mail-in and absentee ballots to be returned to the "county board of election," interpreting this to "permit[] county boards of election to accept hand-

10

delivered mail-in ballots at locations other than their office addresses including drop-boxes." *Boockvar*, --- A.3d at ----, 2020 WL 5554644, at *10.

The use of such drop-boxes does not violate federal equal-protection rights. Though every citizen has a fundamental right to vote without that vote being burdened by dilution, the Constitution grants states "broad authority to regulate the conduct of elections, including federal ones." *Ill. State. Bd. Of Elections v. Socialist Workers Party,* 440 U.S. 173, 184 (1979) (the right to vote is a fundamental right); *Minn. Voters Alliance v. Ritchie*, 720 F.3d 1029, 1031 (8th Cir. 2013) (the right to vote includes the right to have the vote counted without dilution); *Griffin v. Roupas*, 385 F.3d 1128, 1130 (7th Cir. 2004) (states have broad authority under the Constitution to regulate the conduct of elections). Though he does not explicitly connect the use of drop boxes to his equal protection claim, it appears that Bolus has concerns that when some counties use drop boxes and some do not, the voters in counties with drop boxes will be at higher risk of having their vote diluted than the voters in counties that do not utilize drop boxes. (Doc. 1, at 9-10, 18-19). While Bolus does not allege nor prove that votes cast in some counties are diluted by a greater amount than votes cast in other counties, his more fatal failure lies in the effects of any dilution. If a fraudulent ballot is cast through a drop box, every voter in the state will have their vote diluted equally. The legitimate votes in the counties with the drop box will not be worth less than the legitimate votes in the counties without the drop box. This holds true regardless of the relevant electoral unit: if a congressional district is made up of multiple counties and one county uses drop boxes and one does not, a fraudulent vote in the county with the drop boxes will dilute all votes, regardless of county, equally. Therefore, the Equal Protection Clause is not implicated by the use of drop boxes and other ballot

collection practices.[4] *See Boockvar*, --- F. Supp. 3d ----, 2020 WL 5997680, at *41-46 (discussing this issue further).

Bolus's request that the Court enjoin Defendants from limiting poll watchers to their county of residence is also unlikely to succeed on its merits. (Doc. 1, at 20). Bolus asserts that this results in votes being cast without "procedural visibility," and that "without poll watchers, the integrity of the vote in elections is threatened and the constitutional right to free and fair public elections under the United States and Pennsylvania Constitutions is denied." (Doc. 1, at 3, 16). As mentioned *supra*, "state law, not the Federal Constitution, grants individuals the ability to serve as poll watchers and parties and candidates the authority to select those individuals." *Republican Party of Pennsylvania v. Cortés*, 218 F. Supp. 3d 396, 414 (E.D. Pa. 2016). Pennsylvania could arguably eliminate poll watchers entirely without violating the Constitution, as West Virginia already has done. *Boockvar*, --- F. Supp. 3d ---,

---

[4] Even if unequal treatment were established, the Court must exercise caution in second-guessing the decision of the Pennsylvania legislature to authorize a mail-in voting system which left room for counties to authorize drop boxes and other satellite locations for returning ballots. *Boockvar*, --- F. Supp. 3d ---, 2020 WL 5997680, at *50-51 (citing *Boockvar*, --- A.3d at ----, 2020 WL 5554644, at *9). Bolus's claim of dilution is outweighed by the Commonwealth's "interests in administering a comprehensive county-based mail-in ballot plan, while both promoting voting and minimizing fraud." *Boockvar*, --- F. Supp. 3d ---, 2020 WL 5997680, at *51. Thus, Bolus's constitutional challenge would fail under the *Anderson-Burdick* framework. *Boockvar*, --- F. Supp. 3d ---, 2020 WL 5997680, at *51.

For these same reasons, any substantive due process claim must fail. (Doc. 1, at 8-9). State election procedures can be challenged on substantive due process grounds only in limited circumstances. *Nolles v. State Comm. for Reorganization of Sch. Districts,* 524 F.3d 892, 898 (8th Cir. 2008). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Miller v. City of Phila.,* 174 F.3d 368, 375 (3d Cir. 1999) (cleaned up). Bolus's challenge does not rise to the level of a substantive due process violation. *See Boockvar,* --- F. Supp. 3d ---, 2020 WL 5997680, at *51 ("Based on the slight burden imposed here, and the Commonwealth's interests in their overall county specific voting regime, which includes a host of other fraud-prevention measures, the Court finds that the drop-box claim falls short of the standard of substantive due process.").

2020 WL 5997680, at *67 (citing W. Va. Code Ann. § 3-1-37; W. Va. Code Ann. § 3-1-41). The requirement that poll watchers reside in the county where they watch does not limit the voting choices for voters and does not make the act of voting any more difficult. Bolus's complaint fails to articulate how the residency requirement affects the process or outcome of the election, thus the alleged burden is apparently negligible.[5] The Commonwealth's rational basis for the residency requirement is that it promotes poll watchers' familiarity with the voters they are observing and increases trust among the voters. *Boockvar*, --- F. Supp. 3d ---, 2020 WL 5997680, at *72. This rational basis compels the Court to uphold the law. *Boockvar*, --- F. Supp. 3d ---, 2020 WL 5997680, at *71-72.

C.    ABSTENTION IS WARRANTED ON POLL WATCHER LOCATIONS.

Finally, the Court must abstain from entertaining Bolus's request that poll watchers be allowed to observe wherever absentee or mail-in ballots are returned and votes are cast, whether on or before Election Day. (Doc. 1, at 20). This request is directly related to the question of what constitutes a "polling place" under the Election Code, which is a question of state law that is currently under consideration in the Pennsylvania state courts. *Boockvar*, -

---

[5] As to the residency requirement, the Complaint merely states,

Defendants, through their haphazard administration of Act 77, have burdened voters, candidates, and political committees with the arbitrary and illegal preclusion of poll watchers from being present in all locations where votes are being cast because … the poll watcher may only serve in the county of their residence under Election Code Section 417(b), 25 P.S. § 2687(b). The result is that a significant portion of votes for elections in Pennsylvania are being cast in a fashion that denies any procedural visibility.

(Doc. 1, at 3).

13

-- F. Supp. 3d ---, 2020 WL 5997680, at *74.[6] Therefore, under *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), the Court shall refrain from addressing this issue.[7]

D.   THE REMAINING PRELIMINARY INJUNCTION FACTORS WEIGH AGAINST BOLUS.

Looking to the remaining factors of a preliminary injunction request, the only one of the remaining three which favors Bolus is the presence of irreparable harm. *See Grill*, 908 F. Supp. 2d at 591. Whether granting preliminary relief will result in even greater harm to the nonmoving party weighs in favor of the Defendants because if the preliminary injunction were issued it would inarguably limit voting options for thousands of individuals in the midst of a public health crisis, a hardship that outweighs the vote dilution concerns presented with minimal concrete evidence. *See Grill*, 908 F. Supp. 2d at 591. For this same reason, granting the preliminary injunction would not be in the public interest. *See Grill*, 908 F. Supp. 2d at 591.

E.   THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER BOLUS'S STATE LAW CLAIMS

In addition to the claims brought pursuant to the United States Constitution, Bolus brings certain claims under the Pennsylvania state constitution. (Doc. 1). Where a district

---

[6] Though the Court is unable to locate the status of this lawsuit, there is no indication that the case has been resolved since October 10, 2020, when *Boockvar* was signed. *Boockvar*, -- F. Supp. 3d ---, 2020 WL 5997680.

[7] "[Under *Pullman*, federal courts abstain] if (1) doing so requires interpretation of 'unsettled questions of state law'; (2) permitting resolution of the unsettled state-law questions by state courts would 'obviate the need for, or substantially narrow the scope of adjudication of the constitutional claims'; and (3) an 'erroneous construction of state law would be disruptive of important state policies[.]'" *Chez Sez III Corp. v. Township of Union*, 945 F.2d 628, 631 (3d Cir. 1991). If all three requirements are met, then the federal court must make a discretionary determination as to whether abstention is appropriate based on the weight of these factors and other relevant circumstances. *Chez Sez III*, 945 F.2d at 631.

court has dismissed all claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3). Whether the Court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose,* 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Ordinarily, when all federal law claims have been dismissed and only state law claims remain, the balance of these factors indicates that these remaining claims properly belong in state court. *Cohill,* 484 U.S. at 350. "Court have specifically applied this principle in cases raising federal and state constitutional challenges to provisions of the state's election code." *Boockvar*, --- F. Supp. 3d ---, 2020 WL 5997680, at *75 (collecting cases). Therefore, it is recommended that a preliminary injunction not be granted on state law grounds.

**III.  RECOMMENDATION**

Based on the foregoing, it is recommended that Plaintiff's Request for a Preliminary Injunction (Doc. 1, at 19-20) be **DENIED**.[8]

Dated: October 27, 2020                                     *s/ Karoline Mehalchick*
                                                            **KAROLINE MEHALCHICK**
                                                            **United States Magistrate Judge**

---

[8] When a request for a preliminary injunction can be resolved on legal grounds alone, an evidentiary hearing is unnecessary. *Beberman v. United States Dept. of State*, 675 F. App'x 131, 135 (3d Cir. 2017).

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

BOB BOLUS, SR.,

                Plaintiff,

      v.

KATHY BOOCKVAR, et al.,

                Defendants.

CIVIL ACTION NO. 3:20-CV-01882

(MARIANI, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **October 27, 2020**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: October 27, 2020

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**